* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Hall with minor modifications.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 2 
 FINDINGS OF FACT
1. At the time of the incidents, which are the subjects of this claim, an employment relationship existed between plaintiff and defendant-employer George S. Millar, LLC. Defendant-employer, George S. Millar, LLC, is engaged in the business of residential and commercial renovations and repairs.
2. On July 24, 2006, plaintiff was painting the walls of a garage for defendant-employer. As plaintiff bent over and picked up a five-gallon bucket of paint, he felt a pop in his back.
3. According to Employment Security Commission records, defendant-employer had only two employees on the date of plaintiff's injury. However, plaintiff is not listed on those Employment Security Commission records. Including plaintiff, defendant-employer would have had at least three employees on the date of plaintiff's injury and would have been subject to the North Carolina Workers' Compensation Act.
4. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. Defendant-employer did not have workers' compensation insurance at the time of plaintiff's specific traumatic incidents.
5. Plaintiff received treatment for thoracic and upper lumbar back pain at Nash General Hospital on July 25, 2006. Dr. Kenneth E. Moore, the attending physician, ordered a CT scan of plaintiff's lumbar spine that revealed minimal right and left posterior disc bulging at L2-L3 and bi-lateral hyper-trophy, broad-based and left lateral disc bulging superimposed on mild circumferential spinal stenosis at L3-L4, left paracentral/left posterolateral disc bulging versus herniation, super-imposed on moderate circumferential spinal stenosis at L4-L5, left paracentral to left lateral disc herniation at L5-S1. *Page 3 
6. After examination and review of the CT scan, Dr. Moore discharged plaintiff from the emergency room with prescriptions for Flexeril, Percocet, and Prednisone, and instructions to follow up with his family physician, Dr. Broderick Bello at Boice Willis Clinic.
7. Plaintiff presented himself to Dr. Bello on July 27, 2006, complaining of mid-thoracic and lumbar back pain. Dr. Bello's diagnosis was that plaintiff had musculoskeletal back pain with some L4-L5, L5-S1 disc bulging and mild spinal stenosis. Dr. Bello renewed plaintiff's prescription for Percocet, prescribed a non-steroidal for inflammation, and scheduled plaintiff for further evaluation in one week. Plaintiff did not follow-up with Dr. Bello.
8. On September 7, 2006, plaintiff presented himself to the emergency room at Nash General Hospital complaining of pain in the midline lumbar region. He gave a history of picking up a 38-foot ladder at work and feeling sudden pain in his back. The onset of pain was accompanied by a "pop." On examination, plaintiff demonstrated midline tenderness in the lower back area. A lumbar spine x-ray study showed no fracture, subluxation, bony lesion, or cord compression. There was a disc bulge at L3-L4, a disc bulge or herniation at L4-L5, and a left paracentral-to-lateral disc herniation at L5-S1. Janet Rippel, PA-C prescribed Ketorolac and Morphine for plaintiff, which relieved some of his pain. Ms. Rippel counseled plaintiff on the seriousness of his condition, recommended follow-up treatment with his personal physician and released plaintiff from the emergency room. Plaintiff sought no further treatment.
9. On October 29, 2006, plaintiff presented himself to the emergency room of Nash General Hospital complaining of severe back pain after lifting his daughter from the bathtub. The attending physician's assessment was that plaintiff was suffering from low back pain secondary to a herniation. Plaintiff was given Percocet and Flexeril, which lessened his pain. *Page 4 
Thereafter, plaintiff was discharged from the emergency room with instructions to follow up with Dr. Robert C. Martin, an orthopedist at Carolina Regional Orthopaedics.
10. Stephen J. Mould, PA-C for Dr. Martin, saw plaintiff at Carolina Regional Orthopaedics on November 1, 2006. Plaintiff gave Mr. Mould a history of having injured his back while moving a paint bucket in July 2006 and being treated for that injury at Nash General Hospital. According to plaintiff, he had a CT scan at that time, which showed no fractures, but some bulging discs. The emergency room physician had started plaintiff on medications and plaintiff felt that he was improving. Sometime later, plaintiff said he picked up a ladder at work and his back popped again. He went to the emergency room at Nash General Hospital, where he had a repeat CT scan and was released on medications. Plaintiff hurt his lower back a third time, when he lifted his child out of the bathtub on October 29, 2006, just two days prior to presenting himself at Carolina Regional Orthopaedics for follow up evaluation and treatment.
11. Mr. Mould's general observations of plaintiff on November 1, 2006 were that plaintiff was ambulatory and in no acute distress, that he moved gingerly and had limited range of motion in his back. Mr. Mould's physical examination of plaintiff indicated that plaintiff was tender at the thoracolumbar junction and had some pain on palpation in the SI joint region. Plaintiff demonstrated a good range of motion in his hips, knees, and ankles. He had full strength in both of his legs, though he demonstrated some guarding during the strength testing. Straight leg raises were negative for radicular leg pain. Plaintiff had normal sensation and reflex in his legs and feet.
12. Mr. Mould ordered x-rays of plaintiff's back, which were immediately done on site. The x-rays showed that the vertebral body heights and the disc space heights were well maintained in plaintiff's back. The thoracic spine films showed mild and diffuse narrowing of *Page 5 
the disc spaces with some anterior osteophyte formation. Mr. Mould also reviewed plaintiff's CT films, previously done for the emergency room at Nash General Hospital. The CT scans showed no fracture, dislocation, lesion, or masses. There were some mild and diffuse degenerative changes and multiple areas of mildly bulging discs, but no frank herniation.
13. Based on his examination of plaintiff and his review of the new x-rays and previous CT scans, Mr. Mould was of the opinion that plaintiff's back pain was the result of thoracolumbar degenerative joint disease. Mr. Mould recommended an epidural Cortisone injection to determine if a series of such injections would be effective in relieving his back pain. In the interim, Mr. Mould gave plaintiff a prescription for Percocet and took him out of work. Mr. Mould's plan was that plaintiff would proceed to get the test epidural injection and return in two to three weeks to evaluate the effectiveness of the injection. Plaintiff did not present himself for the test injection, nor did he return to Carolina Regional for further evaluation or treatment.
14. Dr. Martin reviewed plaintiff's spine x-rays and CT scans. Even though Dr. Martin was familiar with plaintiff's case through Mr. Mould, Dr. Martin never had the opportunity to meet, observe, or physically examine plaintiff. Dr. Martin's opinion of plaintiff's radiograph studies was that the studies were consistent and indicative of thoracolumbar degenerative joint disease. The studies revealed degenerative changes in plaintiff's thoracic and lumbar spine that were wear-related and chronic in nature. The studies revealed no evidence of any acute injury to plaintiff's thoracic or lumbar spine. The CT scans of July 24, 2006 and September 7, 2006 showed the same degenerative changes. Dr. Martin testified that no changes occurred in the condition of plaintiff's spine, chronic or acute, between the two studies.
15. Based on the imaging studies, the history provided by plaintiff, and Mr. Mould's findings, Dr. Martin was of the opinion that plaintiff suffered back strain as a result of lifting the *Page 6 
five-gallon paint bucket on July 24, 2006. Plaintiff suffered another back strain again, when he lifted the extension ladder on September 7, 2006.
16. Dr. Martin was of the opinion that plaintiff's pre-existing degenerative joint disease had weakened plaintiff's strength and undermined his bodily support system to the point that the stress of lifting the five-gallon paint bucket and the extension ladder caused back strains, which plaintiff experienced as back pain.
17. Dr. Martin did not treat plaintiff for the back strains he sustained on July 24, 2006 and September 7, 2006. Therefore, Dr. Martin had no personal knowledge, nor reasonably reliable information upon which to base an opinion as to the length of time that plaintiff may have been totally or partially disabled by the back strains that he suffered on those two days.
18. Plaintiff presented himself for evaluation and treatment at Nash General Hospital on December 8, 2006. He complained of a gradual onset of paralumbar pain over a two-week period after heavy lifting. Dr. John Guha released plaintiff from the emergency room with prescriptions for Lortab, Xanax, Flexeril, and instructions to follow-up with his personal physician, Dr. Bello.
19. On December 11, 2006, plaintiff presented himself to Dr. Bello for further evaluation and treatment of the back injury that he sustained on December 8, 2006. Plaintiff told Dr. Bello that he had an exacerbation of back pain while picking up his daughter on December 8, 2006. Dr. Bello's diagnosis was that plaintiff had sustained an acute low back strain and a history of L4-L5, L5-S1 disc bulges and mild spinal canal stenosis. Dr. Bello started plaintiff on a trial of Cymbalta and continued him on Percocet and Flexeril and advised him to follow up with Dr. Martin. If plaintiff did not follow-up with Dr. Martin, Dr. Bello requested that he return *Page 7 
to his office in four weeks to evaluate the efficacy of the Cymbalta. Plaintiff did not follow up with either Dr. Martin or Dr. Bello.
20. Plaintiff presented himself for evaluation and treatment at Nash General Hospital on December 27, 2006. At that time, plaintiff complained of an onset of middle back pain while chasing a child. The attending physician prescribed Lortab, Xanax, and Flexeril and advised plaintiff to follow-up with his personal physician.
21. Plaintiff presented himself for evaluation and treatment at Nash General Hospital on January 18, 2007. At that time, plaintiff complained of moderate tenderness around the thoracic-lumbar junction after slipping on ice and falling that same morning. Dr. Susan Keen requested an x-ray of plaintiff's thoracic spine, which showed degenerative disc changes without visible fractures. The bone alignment appeared normal and the vertebral body heights were maintained at all levels. Lumbar x-rays showed some narrowing of the T10-T11, T11-T12, and T12-L1 intervertebral spaces. No fractures or significant subluxations were present and the paraspinous soft tissues were within normal limits. Dr. Keen released plaintiff from the emergency room with prescriptions for Lortab, Xanax and Flexeril and advised plaintiff to follow-up with his personal physician.
22. Dr. Bello saw plaintiff on follow-up on January 22, 2007. Dr. Bello was of the opinion that plaintiff had suffered a recurrent back strain from falling on the ice. Dr. Bello's physical examination was unchanged from previous examinations. Dr. Bello continued plaintiff on his current medications and advised him to continue with any physician currently treating his degenerative back disease.
23. Joseph W. Williams, PA-C for Dr. David C. Miller, at Carolina Regional Orthopaedics, examined plaintiff on July 5, 2007. Plaintiff had injured his back swinging a golf *Page 8 
club on June 18, 2007. Mr. Williams ordered lumbar spine x-rays. The x-rays showed that the disc spaces were well maintained with no obvious abnormalities. Plaintiff had some mild disc space narrowing at L4-L5 and L5-S1 and some mild sclerosis at the L4-L5 and L5-S1 facet joints. Based upon the x-rays and his examination, Mr. Williams' diagnosis was that plaintiff was suffering from axial neck and mid thoracic low back pain following a work-related accident on July 24, 2006, which plaintiff aggravated by swinging a golf club on June 28, 2007.
24. After plaintiff stopped working with defendant-employer, he worked for Van Parker as a maintenance man, but was let go because he was needed every day. He was paid $15.00 per hour. He estimates that he made $1,200.00 at this job. He tried to paint a house and was not able to complete the job. He made about $450.00 on this job. He most recently worked for Red Oak Painting for three weeks and made approximately $500.00. Plaintiff put in applications at restaurants in Rocky Mount and has called numerous places to see if they needed any help.
25. Plaintiff failed to offer evidence as to the specific time periods, if any, he was taken out of work due to his July 24, 2006 injury. He also worked for other employers for various periods of time after his injury but plaintiff did not provide evidence of the specific time periods.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following: *Page 9 
 CONCLUSIONS OF LAW
1. On July 24, 2006, an employment relationship existed between plaintiff and defendant-employer. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2.
2. On July 24, 2006, plaintiff lifted a five-gallon bucket of paint and strained his back. Plaintiff's back strain arose out of and in the course of his employment and was the direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2.
3. Defendant-employer had three or more employees on July 24, 2006 as defined by the Workers' Compensation Act and was required to carry worker's compensation insurance. N.C. Gen. Stat. § 97-93.
4. In order to recover compensation, not only must plaintiff prove that he sustained a back injury as a result of a specific traumatic injury, he must also prove that his injury caused him disability and the extent of the disability. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). Disability is defined in N.C. Gen. Stat. § 97-2(9) as the "incapacity because of injury to earn the wages the employee was receiving at the time of the injury in the same or any other employment. N.C. Gen. Stat. § 97-2(9).
5. Plaintiff may prove disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work, but it would be futile because of pre-existing conditions, i.e. age, inexperience, lack of education, to seek other employment or (4) the production of evidence that he has obtained other employment at a wage *Page 10 
less than that earned prior to the injury." Russell v. Lowes ProductDistribution, 108 N.C.App. 762, 765-766, 425 S.E.2d 454, 457 (1993).
6. Plaintiff presented no evidence of any pre-existing conditions that would make it futile for him to seek employment. Plaintiff introduced no evidence that he had obtained other employment at a wage less than that he earned from defendant-employer, and therefore, plaintiff cannot rely on the third and fourth methods provided by Russell to prove his disability.
7. Plaintiff introduced his Nash General Hospital records for July 24, 2006, the office records of Dr. Bello of July 27, 2007, and the testimony of Dr. Bello. The only medical evidence that plaintiff was disabled from the back strain was Dr. Bello's recommendation that plaintiff return for "close follow up in one week." Plaintiff did not return for additional evaluation of his back strain, and, therefore, failed to prove that he was disabled from earning wages for more than one week.
8. On September 7, 2006, plaintiff lifted a ladder and strained his thoracic spine. Plaintiff's back strain arose out of and in the course of his employment and was the direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
9. Plaintiff introduced his Nash General Hospital records of September 7, 2006 that confirmed that he had sustained a thoracic strain. Plaintiff sought no further treatment of his back strain after September 7, 2006, and, therefore, is unable to produce any medical evidence that he was disabled as a result of the thoracic strain, or if he was disabled, the extent or duration of the disability.
10. Plaintiff failed to introduce any competent medical evidence that either his back injury of July 24, 2006 or his back injury of September 7, 2006, or the two injuries combined, resulted in any permanent injury to plaintiff's back, or contributed to any progression or change *Page 11 
in his degenerative back disease. Click v. Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980).
11. Plaintiff's back strains of October 29, 2006, December 8, 2006, December 27, 2006, January 18, 2007, and June 18, 2007, were not casually related to plaintiff's work related injuries of July 24, 2006 and September 7, 2006. Click v. Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980).
12. Plaintiff is entitled to the payment of medical expenses incurred that are reasonably related to his injury on July 24, 2006 and his back injury of September 7, 2006 when the medical bills have been submitted according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25 and 97-25.1.
13. Plaintiff has failed to carry the burden of proving any disability as a result of either of his compensable injuries for a period greater than seven days and, therefore, is not entitled to disability compensation under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-28.
14. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
15. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, willfully fails to bring the employer in *Page 12 
compliance, shall be guilty of a Class H felony. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, neglects to bring the employer in compliance, shall be guilty of a Class 1 misdemeanor. Any person who violates this subsection may be assessed a civil penalty by the Commission in an amount up to one hundred percent (100%) of the amount of any compensation due the employers' employees injured during the time the employer failed to comply with N.C. Gen. Stat. § 97-93. N.C. Gen. Stat. § 97-94(d).
16. Defendant-employer George S. Millar, LLC was subject to the Act and did not have workers' compensation insurance to cover its employees as required by the Act on July 24, 2006. N.C. Gen. Stat. § 97-93.
17. George S. Millar was responsible for the maintenance of the workers' compensation insurance and had the ability and authority to bring Defendant-Employer George S. Millar, LLC into compliance with the Act. N.C. Gen. Stat. § 97-94(d).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for temporary total disability compensation is hereby DENIED.
2. Defendant-employer George S. Millar, LLC shall pay plaintiff's medical expenses that are reasonably related to his injuries on July 24, 2006 and September 7, 2006 when the medical bills have been submitted according to established Industrial Commission procedures.
3. Defendant's counsel shall send a copy of this decision to all of the healthcare providers that have provided treatment reasonably related to plaintiff's injuries on July 24, 2006 and September 7, 2006. The healthcare providers with outstanding bills in this matter shallnot seek to obtain collection of these bills from Larry Smith. Collection should be directed to George S. Millar, LLC, 8 Goldeneye Cove, Rocky Mount, NC 27804. Failure to comply with *Page 13 
this Order by the healthcare providers and their collection agencies will result in the initiation of contempt proceedings against persons in violation of this Order.
4. Pursuant to N.C. Gen. Stat. § 97-94(b), a civil penalty in the amount of $50.00 per day is hereby assessed against Defendant-Employer George S. Millar, LLC for failure to maintain workers' compensation coverage on their employees in North Carolina on July 24, 2006. Defendant shall make a check payable to the North Carolina Industrial Commission in the amount of $50.00 and send it to Assistant Attorney General Tracy C. Curtner at the office of the North Carolina Industrial Commission Fraud Section. 5. As part of the costs, defendant-employer shall pay the expert witness fee for Broderick Bello, M.D. in the amount of $150.00.
6. Defendant-Employer shall pay the costs.
This the 11th day of July, 2008.
 S/___________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1